FILED
2024 Jun-25  PM 05:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| HAZEL PETTWAY, ET AL., | ) CASE NO. 7:23-CV-00047-LSC |
| | ) |
| Plaintiffs, | ) |
| | ) |
| R. L. ZEIGLER CO., INC. RL ZEIGLER | ) |
| COMPANY, INC. MONEY PURCHASE | ) |
| PENSION PLAN, | ) |
| AND W. K. FITZGERALD, | ) |
| | ) |
| Defendants. | ) |

**[UNOPPOSED] MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND PRELIMINARY CLASS CERTIFICATION**

NOW COMES Plaintiff George Baker, on behalf of the putative class, and hereby moves this Court to enter an Order preliminarily certifying a class, for purposes of settlement only, and preliminarily approving the Class Action Settlement Agreement between Plaintiff Baker, as putative class representative, and Defendants R.L. Zeigler Co., Inc., R.L. Zeigler Company, Inc. Money Purchase Pension Plan (the "Plan") and W.K. Fitzgerald (collectively, the "Defendants").[1][2] Plaintiff has consulted with Defendants, who do not oppose this motion for the sole purpose of effecting the settlement. For the reasons shown below, the settlement is fair, reasonable, and adequate, and the settlement class may be properly certified.

**I.    INTRODUCTION**

This ERISA lawsuit has been pending since January 2023. (Dkt. No. 1). Plaintiff Baker now seeks preliminary class certification and preliminary approval of a settlement that provides

---

[1] The Settlement Agreement and its accompanying exhibits are attached as Exhibit 1.
[2] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

substantial economic relief to the proposed Class Members totaling **$253,700.00**. No claim form is necessary is necessary to qualify for payment – **all Class Members will receive an equal payment,** and attorney's fees and costs will not be deducted from this amount.

The Settlement was reached after substantial document production and discussions between the parties, and was negotiated at arm's length with the assistance of Bruce F. Rogers of Bainbridge Mims Rogers & Smith, LLP. Mr. Rogers is an experienced mediator with a strong knowledge of matters arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The extensive discovery and settlement negotiations allowed the Parties to understand fully the risks of litigation and potential recovery for the Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Overview of the Case

The lawsuit was brought individually and on behalf of a putative class of individuals who were Participants in the Plan or became Participants in the Plan on and after December 1, 2018 through present, and Eligible Beneficiaries[3] of deceased Participants in the Plan during the same time period set forth above who were entitled to receive a pension benefit statement. In sum, Plaintiffs allege Defendants failed to administer the Plan as required by ERISA, including the failure to disburse vested retirement funds to Plan members and failure to provide required information about individual pension accounts. Defendants deny these allegations and deny any wrongdoing or liability.

---

[3] Eligible Beneficiaries includes: (1) beneficiaries who were designated by a Participant evidenced by a signed beneficiary designation form or (2) who were not designated, but were eligible to receive benefits on behalf of a participant in accordance with the terms of the Plan. Further, to be an Eligible Beneficiary the person must have been entitled to receive a pension benefit statement following the death of the Participant because they maintained an active account in the Plan (one that held monies and gained earnings or interest).

The Plan is a money purchase pension plan under ERISA (29 U.S.C. §1002(34)). (Summary Plan Document attached to Amended Complaint (Dkt. No. 15) as Exhibit A). As a money purchase pension plan, the Plan is a defined contribution plan that provides an individual account to each participant to which the employer makes contributions based on a fixed percentage of an employee's annual compensation. (*Id.*). The Plan contains a formula for the contributions and a vesting schedule based on years of service. (*Id.*). Participants do not have the right to direct investments in the Plan. (*Id.*). Conversely, all Plan assets are invested together and, therefore, garner the same return. (*Id.*). W.K. Fitzgerald is the Plan Administrator of the Plan and named fiduciary of the Plan. (*Id.*). R.L. Zeigler, Inc. ("Zeigler") is an Alabama corporation that's principal place of business is in Tuscaloosa County, Alabama. Zeigler was sold in 2023, and as a result, the Named Plaintiffs still employed with Zeigler were terminated.  (Dkt. No. 15, p. 19, ¶74).

### B.    <u>Background of the Litigation</u>

#### 1.    <u>Initial Pleadings</u>

On January 12, 2023, Plaintiff Baker, along with ten additional plaintiffs, initiated their lawsuit against Defendants. (Dkt. No. 1). On February 21, 2023, the Plaintiffs filed an Amended Class Action Complaint ("Amended Complaint"). (Dkt. No. 15).  The Amended Complaint added 14 additional plaintiffs for a total of 25 individual plaintiffs (collectively, "Named Plaintiffs").

Counts I, II, V, VI, and VII of the Amended Complaint seek only individual relief on behalf of some or all of the Named Plaintiffs. Counts III and IV of the Amended Complaint seek relief on behalf of a putative class.

Defendants filed an Answer and Affirmative Defenses to the Amended Complaint on April 5, 2023. (Dkt. No. 22).

#### 2.    <u>Defendants Disburse Pension Benefits and Provide Pension Benefits Statements</u>

Following the filing of the Complaint, starting in mid-March 2023, Defendants began a rolling disbursal of pension funds and delivery of outstanding pension benefit statements ("PBS"). By October 2023, Defendants had disbursed approximately $2,100,000.00 in pension funds and delivered the PBSs to Participants and Eligible Beneficiaries for Plan Years 2020, 2021, and 2022. Following the filing of this Lawsuit and as of the date of this filing, it is believed that all Participants and Eligible Beneficiaries have been paid all amounts currently due under the Plan. Furthermore, Zeigler is no longer operating and is no longer a going concern. Because Plan participation has dwindled substantially following the closure of Zeigler's business, Zeigler, intends to terminate the Plan at some point after August 28, 2024.

3. <u>Discovery</u>

The Parities engaged in significant and meaningful discovery in this matter. Between May 2023 and November 2023, pursuant to Fed. R. Civ. P. 26(a)(1), Defendants produced to the Named Plaintiffs a substantial number of documents regarding the claims raised, such as the Plan documents, documents regarding the funding of and contributions to the Plan, and copies of distribution checks to the Plaintiffs. Named Plaintiffs produced emails, statements, memoranda, and other documents in their possession related to the allegations in the lawsuit.

On November 16, 2023, the Named Plaintiffs propounded 14 Requests for Production and 31 Requests for Admissions on Defendants. On December 18, 2023, Defendants served its objections and responses to the Named Plaintiffs' Request for Production and Request for Admissions. On January 8, 2024, Defendants served amended objections and responses to the Named Plaintiffs' Requests for Admissions. Overall, Defendants produced and Plaintiffs reviewed over 1700 documents. On January 16, 2024, Defendants served their First Request for Production and First Set of Interrogatories on the Named Plaintiffs.

The Parties agreed to dates for depositions to be held following the schedule mediation. However, a settlement agreement was reached prior to any deposition being taken.

### C.    <u>Settlement Discussions and Resolution through Mediation</u>

Following the filing of the Complaint, the Parties engaged in informal, arms-length settlement discussions. The Parties eventually agreed that meaningful document production and completion of certain tasks by Defendants[4] were necessary to evaluate the merit of the claims and determine a meaningful value of the case.

On February 9, 2024, the Court referred this matter to mediation pursuant to Section IV, B of the Court's Alternative Dispute Resolution Plan, adopted December 1, 1993. (Dkt. No. 30). Pursuant to the Order, the Parties were required to select a mediator by no later than February 19, 2024. (Dkt. No. 30).

On April 2, 2024, the Parties attended mediation with Bruce F. Rogers. While the Parties did not agree to a settlement during the mediation on April 2, 2024, the Parties made substantial progress and continued to negotiate thereafter. As a result of the continued negotiations, the Parties were able to reach a final resolution on April 12, 2024. As outlined in the Parties Status Report Regarding Settlement (Doc. 33), the settlement agreement resolves all claims, attorney's fees, and costs. Specifically, the Parties agreed to settle the individual claims (Counts I, II, V, VI, and VII), voluntarily dismiss Count III,[5] and proceed with a class resolution of Count IV.  The individual settlement agreement was for distinct claims relating to specific individual plaintiffs. Those claims were for breach of fiduciary duty by Defendants and for their failure to provide requested benefits, breach of fiduciary duty regarding minimum funding standards, to provide plan documents as

---

[4] These actions included the disbursal of pension funds and issuance of PBSs for Plan Year 2020, 2021, and 2021.
[5] Count III of the Amended Complaint alleges that Defendants violated ERISA §502(c) by failing to provide minimum funding notices to participants in violation of 29 U.S.C. §1021(d).

requested, and breach of fiduciary duty regarding timely filing of required forms with the federal government and for non-monetary relief for reporting, funding, and disclosure violations. After the filing of the lawsuit, it is believed that all benefits requested and owed from the Plan have been paid out of the Plan. The total amount of the individual settlement agreement is $46,300.00.  Class Members other than the Named Plaintiffs have not released those claims pursuant to the Class Settlement Agreement. . Importantly, the Named Plaintiffs will not receive any recovery for Count IV from the individual settlement agreement. As Participants in the Plan and members of the Class, they will receive the same payment as all Class Members for the Defendants' alleged violation of 29 U.S.C. §1025(a)(1)(A)(ii) by failing to provide automatic annual pension benefit statements (without a request for the statement made).

As such, following the individual settlement and the agreed dismissal of Count III, the only remaining claim in the Amended Complaint is Count IV.

### D.    Count IV: Failure to Provide Annual Pension Benefit Statements

Count IV is a class count that alleges Defendants failed to provide annual pension benefit statements to participants or Eligible Beneficiaries as required under 29 U.S.C. §1025(a)(1)(A)(ii), warranting relief under 29 U.S.C. §1132(c)(1).

Specifically, 29 USCS § 1025(a) states:

(a) Requirements to provide pension benefit statements.

(1) Requirements.

(A) Individual account plan. The administrator of an individual account plan (other than a one-participant retirement plan described in section 101(i)(8)(B) [29 USCS § 1021(i)(8)(B)]) shall furnish a pension benefit statement—

(i) at least once each calendar quarter to a participant or beneficiary who has the right to direct the investment of assets in his or her account under the plan,

6

> *(ii) at least once each calendar year to a participant or beneficiary who has his or her own account under the plan but does not have the right to direct the investment of assets in that account*, and
> (iii) upon written request to a plan beneficiary not described in clause (i) or (ii).

(emphasis added).

29 USCS § 1132(c)(1) states:

> *Any administrator (A) who fails to meet the requirements of paragraph* (1) or (4) of section 606, section 101(e)(1), section 101(f), section 105(a), or section 113(a) [29 USCS § 1166, 1021(e)(1), 1021(f), *1025(a)* or 1033(a)] with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request *may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal*, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation."

(emphasis added).

Defendants deny all allegations in Count IV and deny any wrongdoing or liability.

## III.   SUMMARY OF THE PROPOSED SETTLEMENT TERMS

### A.   The Proposed Settlement Class

Plaintiff Baker proposes the following class:

All participants of the R.L. Zeigler Co., Inc. Money Purchase Pension Plan who were participants in the Plan or became participants on and after December 1, 2018 through present or were entitled to a pension benefit statement during that time period.[6]

---

[6] This definition includes beneficiaries of deceased Participants ("Eligible Beneficiaries") of the Plan who were entitled to receive a pension benefit statement. Eligible Beneficiaries includes: (1) beneficiaries who were designated by a Participant evidenced by a signed beneficiary designation form or (2) who were not designated, but were eligible to receive benefits on behalf of a participant in accordance with the terms of the Plan. Further, to be an Eligible Beneficiary the person must have been entitled to receive a pension benefit statement following the death of the

Excluded from the Class are Defendant Ken Fitzgerald and any member of the board of directors of Defendant R.L. Zeigler Co., Inc.

(the "Class") (Ex. 1, § I, ¶A).

There are approximately 178 Class Members.[7]

### B.    Class Settlement Benefit to the Class

The Settlement provides substantial economic benefit to the Class. The Settlement provides $253,700.00 of economic value to the Class. (Ex. 1, § IV, ¶2). Specifically, the class funds shall be split equally among all eligible Participants and/or Eligible Beneficiaries. (Ex. 1, § V, ¶1). No attorney's fees or costs will be deducted from this amount. (Ex. 1, § VII, ¶¶1-2).[8]

### C.    Notice and Administration

The Class Settlement Agreement provides for direct notice to Class Members by sending the Notice Form (Exhibit A to the Settlement Agreement, Ex. 1) through direct mail. The Notice Form contains all the information required by Rule 23(c)(2)(B) and is clear and easily understood. Plaintiffs' counsel has retained Rust Consulting, Inc., a well-respected and experienced administrator that has successfully overseen the administration of similar class settlements, to carry out the notice and administration of this Settlement.

The Settlement Administrator will establish and maintain a class settlement website, which will contain all important settlement documents, including the Settlement Agreement, and provides

---

Participant because they maintained an active account in the Plan (one that held monies and gained earnings or interest).

[7] To the extent any Participant entitled to recover under this Settlement is deceased and has multiple beneficiaries, the beneficiaries will each receive a copy of the Class Notice and will receive a pro rata portion (split among the eligible beneficiaries of the deceased Participate) of the amount that would have been distributed to the Participant under the Settlement Agreement had he/she been alive.

[8] In the unlikely event that a tax obligation arises from the holding of the fund itself, tax obligations would be deducted from the Settlement Fund. This does not include basic tax filings that may be required related a Qualified Settlement Fund, which are considered a normal cost of administration. (Ex. 1, § V, ¶6).

no-cost avenues for Class Members to seek additional information or answers to questions not addressed on the website or in the notices.

No claims form will be used, and no action is required from Class Members to receive Settlement benefits. (Ex. 1, § VI, ¶2). Moreover, all Class Members will receive an equal share of the Settlement proceeds. (Ex. 1, § V, ¶1).

The notice plan and notice documents contemplated by the Settlement Agreement go beyond the notice required by Rule 23(c) and ensure that adequate notice is provided to the Settlement Class of this proposed settlement.

### D.    Release of Claims

In exchange for payment of the Settlement Amount from Defendants and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs and the Class will release any claims which were asserted in the Class Claim in the Lawsuit (Count IV) or that arise from the facts and allegations presented in Count IV of the Amended Complaint. The Released Claims are set forth in full in the Settlement Agreement. (Ex. 1, § XI, ¶1).

## IV.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

Plaintiff Baker respectfully seeks, and Defendants do not oppose, preliminary certification of the Class for settlement purposes only. Preliminary certification allows for notice of the terms of the settlement, the right to object, the right to be heard, and the time and place of final approval to be provided to the settlement class.

"It is well established a class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litigation*, 275 F.R.D. 654, 659 (S.D. Fla. May 24, 2011). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors

that it would consider in connection with a proposed litigation class, i.e. all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied-except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *Id.* The requirements of Rule 23 are satisfied here.

A.    **Ascertainability.**

The 11th Circuit requires that the proposed class is "adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) ("Class representatives . . . must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)."). "The Eleventh Circuit has traditionally collapsed class definition and ascertainability into one inquiry. The proposed class cannot be defined through vague or subjective criteria. Instead, class membership must be capable of being determined through objective criteria so that the Court is able to ascertain who belongs in the class. *Doe v. MG Freesites, Ltd.*, 2023 U.S. Dist. LEXIS 225699, *8-9 (N.D. Ala. Dec. 19, 2023) (citing *Cherry*, 986 F.3d at 1303-4) (internal citations omitted).

Here, the class is clearly defined based on precise criteria.  Determining who a Class member is clearly administratively feasible as it only requires a simple review of Defendants' Plan records to determine who a Participant is and/or if the Participant is deceased, whether there is an Eligible Beneficiary who would be entitled to the payment.

B.    **The Class Is Sufficiently Numerous.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "While there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pip. Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). According to

Defendants' records of plan participation, there are approximately 178 Class Members. The proposed class therefore easily meets the numerosity requirement.

###    C.    There Are Common Questions of Law and Fact.

Commonality is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality of claims requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009). The Supreme Court has defined a common question of law or fact as one that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The only claim in this matter that pertains to the Class is whether the Defendants violated ERISA and their fiduciary duties by failing to provide to the Plan Participants and Eligible Beneficiaries who were entitled to receive annual pension benefit statements those statements at least once each calendar year pursuant to 29 U.S.C. §1025(a)(1)(A)(ii), and in the event they did not receive a pension benefit statement, whether they are entitled to discretionary relief in the amount of up to $110.00 per day from the date of the violation under 29 U.S.C. §1132(c)(1).

Put another way, Plaintiffs' allegations all stem from the same occurrence – Defendants alleged failure to provide pension benefit statements annually to Participants and Eligible Beneficiaries. Determining the truth or falsity of this claim would "resolve an issue that is central to the validity of each one of the claims in one stroke." Thus, the commonality requirement is easily met here.

###    D.    The Proposed Representative Is Typical of the Class.

Typicality focuses on the nature of the claims of the class representative, not the specific facts giving rise to those claims. Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other members of the class have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiff, and whether other class members have been injured by the same course of conduct." *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 13211634, at *2 (N.D. Ala. Feb. 6, 2019).  "The typicality requirement "may be satisfied even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class, so long as the claims or defenses of the class and class representatives "arise from the same events, practice, or conduct and are based on the same legal theories." *Id.* (quoting *In re Domestic Air Transp. Antitrust Litig*., 137 F.R.D. 677, 698 (N.D. Ga. 1991) (*further quoting Navelski v. Int'l Paper Co*., 244 F. Supp. 3d 1275, 1306 (N.D. Fla. 2017) (*citing Kornberg v. Carnival Cruise Lines*, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984))).

Here, the sole Class Claim is that Defendants failed to provide pension benefit statements once each calendar year to all Participants and Eligible Beneficiaries of the Plan. Thus, because there is a single legal theory that stems from the same event and that applies to each Class member, including Plaintiff Baker, typicality is satisfied.

### E.    Plaintiff Baker and His Counsel Have and Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) requires that the Court find that the representative parties will fairly and adequately protect the interests of the class. *Dunn v. Dunn*, 318 F.R.D. 652, 666 (M.D. Ala. Sep. 9, 2016). "This analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class and (2) whether the representatives will adequately prosecute the action." *Id.* (quoting *Valley Drug Co. v. Geneva Pharm, Inc*., 350 F.3d

1181, 1189 (11th Cir. 2003)). "Adequate representation is usually presumed in the absence of contrary evidence." *Access Now, Inc. v. Ambulatory Surgery Ctr. Grp., Ltd.*, 197 F.R.D. 522, 528 (S.D. Fla. 2000).

Here, Plaintiff Baker does not possess any conflicts of interest with the Class. Plaintiff Baker and the Class maintain the exact same claim stemming from the same action of Defendants – the alleged failure to provide annual pension benefit statements. Moreover, Plaintiff Baker has demonstrated a willingness to prosecute the action by reviewing the pleadings in this case, reviewing documents provided by Defendants, providing emails and other documents in discovery to substantiate his claim, and participating in a full-day mediation. Accordingly, the adequacy requirement is met.

In addition, Class Counsel in this case is qualified. Class Counsel has extensive experience litigating class actions, including ERISA class actions, ERISA claims, and other complex litigation.[9] Here, they have committed a substantial amount of time and resources to litigate the claim. Thus, Class Counsel satisfies Rule 23(a)(4) and Rule 23(g)(1)(A).

    **F.    The Proposed Class Satisfies Rule 23(b)(3).**

Rule 23(b)(3) requires that common questions of law or fact predominate over any questions affecting only individual members, and that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. See Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

    1.   Common Questions of Law and Fact Predominate.

"As to whether common questions predominate, all questions of law or fact need not be common; but some questions must be common to the class and those questions must predominate

---

[9] Plaintiffs' counsel have served as counsel in multiple putative and certified class actions as shown in the attached Exhibit 2.

over individual questions." *In re HealthSouth Corp. Securities Litigation*, 257 F.R.D. 260, 276 (N.D. Ala. 2009) (*citing Cox v. AM. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986)). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008)) (internal citations removed).

Furthermore, the 11th Circuit has adopted this rule of thumb:

> If common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered. . . . If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1235 (11th Cir. 2016) (internal quotations omitted).

Here, the common questions of law and fact set forth above predominate over any individual question because Defendants' alleged misconduct affected all Settlement Class Members in the same manner. As explained above, the claims of the Plaintiff Baker and the Class arise from Defendants' alleged failure to provide annual PBSs to participants or Eligible Beneficiaries as required under 29 U.S.C. §1025(a)(1)(A)(ii), warranting relief under 29 U.S.C. §1132(c)(1). The focus of this claim is the common question of Defendant's duty pursuant to 29 U.S.C. §1025(a)(1)(A)(ii) to provide PBSs annually to all Participants and Eligible Beneficiaries. Plaintiff alleges that Defendants' practice of not sending annual PBSs gives rise to the same liability common to Plaintiff Baker and the Class. The resolution of this issue would have "a direct impact on every class member's effort to establish liability and on every class member's entitlement

to injunctive and monetary relief." *See Klay*, 382 F.3d at 1255. Moreover, the addition or subtraction of Class Members would not have a substantial effect on the substance or quality of evidence offered to prove Defendants' duty or the alleged breach of said duty. *See Brown*, 817 F.3d at 1235.

Accordingly, the claims of the class arise from a similar nucleus of operative facts and involve questions of law common to all Class Members. Individual issues would not overwhelm the common questions.

### 2.  A Class Action Is the Superior Method for Resolution.

Rule 23(b)(3) also asks whether the class action device is superior to other available methods for fairly and efficiently adjudicating the controversy. Four criteria for consideration are offered:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "The superiority inquiry requires the Court to 'consider the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Doe v. MG Freesites, Ltd.*, 2023 U.S. Dist. LEXIS 225699, *44-45 (N.D. Ala. Dec. 19, 2023) (citing *Klay*, 382 F.3d at 1269). Additionally, because certification is being sought as part of a settlement, the Court "need not inquire whether the case, if tried, would present intractable management problems...for the proposal is that there be no trial." *Amchem Products Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

Here, trying the individual claims of hundreds of Class Members in venues across multiple districts would be incredibly costly.  Given the costs of pursuing individual actions and the relatively small amounts at stake for most class members, Class Members have little interest in individually controlling the prosecution of separate actions – a fact evidenced by the fact that Plaintiffs are aware of no other similar cases that have been filed against Defendant to date. To the extent there are potential Class Members that may wish to pursue their own claims regarding these practices, they have the opportunity to opt out and not be bound by the settlement.

Additionally, there would be little benefit to individual class member controlling the litigation.  As outlined above, the elements at issue with this court are precise – did the defendant have a duty to automatically provide PBSs on an annual basis, and, if so, is the Defendant subject to penalty for such failure. This is a clear issue of law that does not benefit from individual prosecution.  Similarly, there is no desirability or undesirability to this litigation being concentrated here versus a different forum. ERISA litigations is almost exclusively conducted in federal district court. This is the judicial district where Defendants reside and where the decisions at issue in this litigation were made.  Finally, the interests of efficiency and the administration of justice for the Parties and for the judicial system are advanced by proceeding as a single case resolved by class-wide resolution.

Accordingly, certification of the Settlement Class is appropriate under Rule 23(b)(3).

## V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. *Poertner v. Gillette Co.*, 2014 U.S. Dist. LEXIS 116616, at *5 (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 F. App'x 624 (11th Cir. 2015). The federal courts have long recognized a strong policy and presumption in favor of class settlements. "Compromises of disputed claims are

favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595, 30 S. Ct. 441, 54 L. Ed. 625 (1910). In the 11th Circuit and nationwide, there is a "policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977); *see also Murchison v. Grand Cypress Hotel Corp.*,13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources.").

Preliminary approval of a class action settlement lies within the sound discretion of the Court. *See In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). When considering the proposed Settlement, the Court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." David F. Herr, *Manual for Complex Litigation* at §21.632 (4th ed. 2019); *In re Blue-Cross Blue Shield*, 2020 U.S. Dist. LEXIS 248401, at *58 (N.D. Ala. Nov. 30, 2020). It is well-settled that a settlement should be approved if it is "fair, adequate, reasonable, and free of fraud or collusion." *Motorsports Merch.*, 112 F. Supp. 2d at 1333 (citing *Bennett*, 737 F.2d at 986).

As set forth below, the proposed Settlement merits preliminary approval and warrants dissemination of notice to the Settlement Class.

## A.    The Relevant Factors Governing Preliminary Approval.

Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).

"Rule 23(e) provides that a court may approve a proposed class action settlement 'only after a hearing and on finding that it is fair, reasonable, and adequate.'" *Sheet Metal Workers Loc. 19 Pension Fund v. Proassurance Corp.*, 2023 U.S. Dist. LEXIS 197170, *16 (N.D. Ala. Aug. 25, 2023) (quoting Rule 23(e)(2)).

In determining whether the class action settlement is fair, reasonable, and adequate, the district court considers these factors:

1. The likelihood of success at trial;
2. The range of possible recovery;
3. The point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;
4. The complexity, expense, and duration of the litigation;
5. The substance and amount of opposition to the settlement and
6. The stage of the proceedings at which the settlement was achieved.

*Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th Cir. 2012) (citing *Bennett*, 737 F.2d at 986) (these are commonly known as the "*Bennett* factors").

In addition, effective December 1, 2018, Rule 23(e) was amended to add a mandatory but non-exhaustive set of similar final approval criteria:

A. The class representatives and class counsel have adequately represented the class;
B. The proposal was negotiated at arm's length;
C. The relief provided for the class is adequate, taking into account:
    i. The costs, risks, and delay of trial and appeal;
    ii. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    iii. The terms of any proposed award of attorney's fees, including timing of payment; and
    iv. Any agreement required to be identified under Rule 23(e)(3); and
D. The proposal treats class members equitably relative to each other.

*Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1114-1115 (M.D. Fla. Mar. 30, 2021) (quoting Rule 23(e)(2)).

Importantly, "[t]he 2018 amendment to Rule 23(e)(2) is not meant 'to displace' the factors previously identified by courts in reviewing class action settlement agreements, but 'rather to focus

the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Ponzio v. Pinon*, 87 F.4th 487, 494-495 (11th Cir. 2023) (citing Fed. R. Civ. Pro 23(e)(2), Advisory Committee's Note to 2018 Amendment).[10]

**B.    The Proposed Settlement Meets Each of the Rule 23(e)(2) Factors.**

1.    <u>Plaintiff Baker and Class Counsel Have Adequately Represented the Class.</u>

Consistent with Fed. R. Civ. P. 23(a)(4), the Class was adequately represented in this case. Plaintiff Baker has taken his role seriously and demonstrated a willingness to prosecute the action by reviewing the pleadings in this case, reviewing documents provided by Defendants, providing emails and other documents in discovery to substantiate his claim, and participating in a full-day mediation. Moreover, Plaintiff Baker has a genuine personal interest in the outcome of the case as he is participant in the Plan who alleged that he did not timely receive annual pension benefit statements, he selected well-qualified Class Counsel experienced in ERISA and class actions, produced information to Class Counsel to allow for an investigation and development of the pleadings, and was available and did participate in discovery and the mediation.

Class Counsel also vigorously represented the Class throughout the litigation, and both firms have extensive experience litigating class actions, including ERISA class actions, ERISA claims, and other complex litigation. Further, Class Counsel have fully investigated the facts and legal claims, preparing the complaints and conducting extensive discovery including interrogatories, requests for production, reviewing documents produced, participating in a full-day

---

[10] The *Ponzio* Court went on to explain:

> The four core concerns set out in Rule 23(e)(2) provide the primary considerations in evaluating proposed agreements, but we think that the Bennett factors can, where appropriate, complement those core concerns. For example, Bennett factors (1), (2), (4), and (6) can inform "whether the relief provided to the class is adequate" (core concern three). And Bennett factors (3) and (5) can inform "whether the proposal treats class members equitably relative to each other" (core concern four).

*Ponzio*, 87 F.4th at 495 (internal citations omitted).

mediation with Mediator Rogers, and thereafter continuing settlement discussions with the mediator's involvement to finally reach a settlement at arm's length, in good faith, and without collusion. Finally, as set forth above, Plaintiff Baker and his Counsel readily meet the adequacy requirements of Rule 23(a). Whereas, as here, Plaintiff Baker participated in the case diligently, including participating discovery, and Class Counsel engaged in hard-fought litigation, Rule 23(e)(2)(A) is satisfied.

        2.   The Proposal was Negotiated at Arm's Length.

As outlined previously, the Parties initially engaged in informal, arms-length settlement discussions shortly following the filing of the Complaint.  However, it was determined that the case was not ripe for resolution. The Settlement was eventually reached after a full-day mediation with a neutral third-party mediator, and thereafter continued negotiations over several weeks also with the assistance of the mediator. Before discussing settlement, the Parties engaged in significant discovery including but not limited to the production and review of extensive document production for approximately a year. As part of the mediation process, both parties provided the mediator with detailed mediation statements outlining the strengths and weaknesses of their claims and defenses and exchanged those statements with each other. Thus, the Settlement was negotiated at arm's length under Rule 23(e)(2)(B) which weighs in favor of preliminary approval. *See In re Mednax Services, Inc., Customer Data Security Breach Litigation*, 2024 WL 1554329, at *6.

        3.   The Relief Provided for the Class is Adequate in Light of Costs, Risks, and Delay of Trial and Appeal.

In assessing the proposed Settlement, it is necessary to balance the benefits afforded to the Settlement Class – including the immediacy and certainty of a recovery – against the significant costs, risks, and delay of proceeding with litigation. *See* Rule 23(e)(2)(i) and *Bennett* Factors 1, 2, 4, and 6. Indeed, ERISA class actions present numerous hurdles to proving liability that are

difficult to overcome. Although Plaintiff Baker and Class Counsel believe that the claims asserted in this lawsuit are meritorious, continued litigation against Defendants poses substantial risks that make any recovery uncertain.

The Parties did not engage in mediation until April 2, 2024, after litigating this case for over a year (since January 2023). Prior to mediation, the Parties engaged in a significant exchange of documents and exchange of legal arguments regarding disputes related to whether a plaintiff is entitled to damages under 29 U.S.C. §1132(c)(1) when a plan administrator fails to annually provide pension benefit statements under 29 U.S.C. §1025(a)(1)(A)(ii) and whether such an action is a breach of fiduciary duty. Importantly, additional discovery and a trial set for November 4, 2024, would have required significant more time and expense and the Class would likely have had to wait at least another year if not longer before possibly receiving any recovery if they prevailed. Therefore, the extensive litigation to date favors preliminary approval.

In addition, Defendants asserted that some of the Class Members may have received pension benefit estimates and/or that some of the Class Members were not entitled to damages under 29 U.S.C. §1132(c)(1) because they did not request a pension benefit statement in writing and/or had not suffered any damage as a result of not receiving a pension benefit statement. Thus, while Plaintiffs are confident in their claims, there is still inherent risk in further proceeding on the claims as damages under 29 U.S.C. §1132(c)(1) are completely discretionary and can range from $0 a day up to a maximum of $110.00 per day from the date of the violation. 29 U.S.C. §1132(c)(1). Thus, there is no guarantee of the ultimate result if the case proceeds to summary judgment or trial. *See In re Mednax Services, Inc. Customer Data Security Breach Litigation*, 2024 WL 1554329, at *7 (noting that complexity, risk, and expense favor preliminary approval of a class action settlement).

Instead, the Settlement provides each participant, and beneficiary (in the event a participant is deceased and designated a beneficiary) who was entitled to a pension benefit statement an equal portion of payment under 29 U.S.C. §1132(c)(1). As a result, through the Settlement, Plaintiff Baker and Class receive a significant benefit without having to face further risk of not receiving any relief at all warranting preliminary approval.

      4.  <u>The Proposed Method of Distributing Relief to the Settlement Class Is Effective</u>.

Pursuant to Rule 23(e)(2)(C)(ii), the proposed method of notice and claims administration process is effective. The Settlement Agreement does not require any action by Class members to receive Settlement benefits. (Ex. 1, § VI, ¶2). Moreover, all Class members will receive an equal share of the Settlement proceeds. (Ex. 1, § V, ¶1).

Checks will be mailed directly to the Class Members. The Settlement Agreement contemplates that Class Counsel shall work with Defendants to determine the last known address and contact information for all Class members in order for the provision of notice. (Ex. 1, § III, ¶¶3-4). Since the Plan made pension benefit payments as recently as last October, it is believed that most checks will be deliverable. If notices or checks or returned as undeliverable, the Settlement Administrator will use its best efforts to obtain correct current addresses, including utilizing trace searches. (Ex. 1, § III, ¶5).

      5.  <u>Attorney's Fees and Costs</u>

Rule 23(e)(2)(C)(iii) addresses the terms of any proposed award of attorneys' fees. The Settlement Agreement provides that attorney's fees and costs to paid separately and not taken from the class settlement fund. (Ex. 1, § VII, ¶¶1-2). Defendants agree not to object to an amount up to $265,000, inclusive of all fees and costs including the payment of settlement administration costs. The amount was calculated based on actual hours and costs incurred as of the date of the mediation,

and an estimation of hours and costs to be incurred through the end of the litigation, including the costs of administration of the settlement. As provided for in the Settlement Agreement, the settlement is not contingent on whether the Court awards attorneys' fees.

As stated in the Class Notice to class members, Plaintiffs will petition the Court at an appropriate time for their actual costs and fees based on ERISA's fee shifting provision and the factors established in *Freeman v. Continental Ins. Co*. 996 F.2d 1116, 1119 (11th Cir. 1993).

6. <u>The Parties Have No Other Agreements Besides the Supplemental Agreement Concerning Opt-Outs.</u>

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements between the settling parties. In addition to the individual settlement agreement disclosed previously herein, the Parties have entered into a standard provision in the Class Settlement Agreement (Ex. 1, § XII, ¶4), which provides that if requests for exclusion from the Settlement Class exceeds an agreed-upon threshold, the Defendants shall have the option (but not the obligation) to terminate the Settlement.

7. <u>Settlement Class Members Are Treated Equitably</u>

The final Rule 23(e)(2) factor is whether Settlement Class Members are treated equitably.[11] Fed. R. Civ. P. 23(e)(2)(D). As reflected in the Settlement Agreement, the Settlement treats Settlement Class Members equitably.[12] Specifically, no action is required from Class members to receive Settlement benefits, and **all Class Members** will receive an equal share of the Settlement Fund. (Ex. 1, § V, ¶1).  The Notice provides a period to object to the Settlement up to twenty-one (21) days before the Final Approval Hearing. Therefore, it provides a significant time for Class

---

[11] The remaining *Bennett* Factors – 3 and 5 – also help inform this factor. *Ponzio*, 87 F.4th at 495.

[12] The Parties are aware of the Eleventh Circuit's recent decision in *Drazen v. Pinto*, 101 F.4th 1223 (2024).  This class settlement agreement does not give rise to the concerns expressed in that opinion.  All Class Members are being paid under the settlement, the release in the Class Settlement Agreement is limited to the claims asserted in the Class Claim, and the attorney fees are based on the counsels' hourly rates and hours worked.

Members to review the Class notice and investigate whether they believe the Settlement is fair and reasonable, and object prior to Final Approval.

With regarding to possible range of recover, given that penalties under 29 U.S.C. §1132(c)(1) are discretionary and may range from $0.00 per day to $110.00 per day from the date a pension benefit statement was not provided and was required to be provided, the Settlement is reasonable because it provides absolute certainty to the benefit each Class member will receive. As discuss above, the Parties disagreed throughout this litigation – and still disagree – about whether penalties are even appropriate at all under the facts of this case.

*********************************

Thus, each factor identified under Rule 23(e)(2) is satisfied.

## <u>CONCLUSION</u>

For the reasons set out above, Plaintiff Baker respectfully requests that the Court enter the unopposed Preliminary Approval Order attached as Exhibit 3, which will preliminarily certify the Settlement Class, grant preliminary approval of the Settlement, and authorize Notice to the Settlement Class.

Dated: June 25, 2024

Respectfully submitted,

s/ Brad Ponder
J. Bradley Ponder (ASB-0965-P56P)
Montgomery Ponder, LLC
3321 M Street, NW
Upper Floor
Washington, DC 20005
Phone: 888.201.0305
Fax: 205.208.9443
brad@montgomeryponder.com

Luke Montgomery (ASB-3810-A55M)
Montgomery Ponder, LLC
2226 1st Avenue South, Unit 105
Birmingham, AL 35233
Phone: 888.201.0305
Fax: 205.208.9443
luke@montgomeryponder.com

s/ David P. Martin
David P. Martin (ASB-3500-M68D)
M. Clayborn Williams (ASB-9101-A43M)
The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
david@erisacase.com
clay@erisacase.com

Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for all Parties.

s/ Brad Ponder
Of Counsel