FILED
2024 Aug-02  PM 01:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| HAZEL PETTWAY, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| R. L. ZIGLER CO., INC RL ZIGLER | ) CASE NO. 7:23-CV-00047-LSC |
| COMPANY, INC. MONEY | ) |
| PURCHASE PENSION PLAN | ) |
| AND W.K. FITZGERALD, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF OPINION

This matter is before the Court on Plaintiffs' Unopposed Motion for
Preliminary Approval of Settlement and Preliminary Class Certification. (Doc. 37.)
The parties and their attorneys have agreed to settle one of the remaining claims in
this litigation, Count IV, on a class-action basis, subject to the Court's approval.
They agree to voluntarily dismiss the remaining class claim, Count III, and do not
seek the Court's approval. To this point, the Court had not certified any class action
in this case.

The Court has reviewed Plaintiffs' Motion, the terms proposed in the
settlement agreement, and the pleadings filed to this date in this matter to determine
whether to preliminarily approve the proposed class settlement and preliminarily
certify the class for the purposes of Count IV. Having fully considered these
materials, the Court determines that the proposed class is due to be preliminarily

certified and the settlement of Count IV is due to preliminarily approved. The Court further finds that it is not required to approve the dismissal of Count III. An Order will be entered contemporaneously with this Opinion.

1.  **Jurisdiction and Venue**

The Court may exercise jurisdiction over this action pursuant to 29 U.S.C. § 1132 (e)(f), 1161 et seq. and 28 U.S.C. § 1331. The court may exercise jurisdiction over the parties and, for purposes of consideration of the Parties' Proposed Settlement Agreement, over each of the members of the settlement class defined below. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

2.  **Agreed Upon Dismissal of Count III**

While the parties ask this Court to preliminarily approve the settlement and conditionally certify a settlement class for Count IV only, the Court also finds it necessary to discuss whether it must approve the parties' agreement to dismiss the other class claim, Count III. Under Federal Rule of Civil Procedure 23(e), "The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. . . ." However, "the issue of Rule 23(e)'s application to precertification dismissals remains an open question in this Circuit." *Anderberg v. Masonite Corp.*, 176 F.R.D. 682 (N.D. Ga. 1997) (citing *Rice v. Ford Motor Co.*, 88 F.3d 914, 920 n.8 (11th Cir. 1996)).

Some courts have taken a "functional approach," finding that even if Rule 23(e) applies to precertification dismissals, the justification of precertification dismissal approval would be to ensure there was no collusion or prejudice to putative class members in obtaining the dismissal. *Anderberg*, 176 F.R.D. at 688–89 (collecting cases). Accordingly, many of these courts have determined that "[i]f there is no evidence of any collusion between the named plaintiffs and the defendants in seeking the dismissal and no evidence of any prejudice to absent class members, then . . . notice to absent class members is not required." *Id.* at 689–90 (citing *Glidden v. Chromalloy Am. Corp.*, 808 F.2d 621, 627–28 (7th Cir. 1986)) (finding that there is nothing that would warrant disapproval of the dismissal of require notice because 1) "the instant case does not involve a situation where the named representative has settled his individual case and now seeks voluntary dismissal of the class allegations"; 2) "there is clearly no danger of the dismissal having any preclusive effect on absent class members since the deleting of the class allegations occurred prior to any court certification inquiry"; and 3) "there is no evidence that any unnamed class members have learned of this case" and then decided to forego individual litigation in reliance); *see also Gunn v. World Omni Fin. Corp.*, 184 F.R.D. 417, 419 (M.D. Ala. 1999) ("[T]he purpose of the notice requirement is to (1) protect defendants by preventing plaintiffs from appending class allegations to the complaint to extract a more favorable settlement, (2) protect the class from

objectionable structural relief, trade-offs between compensatory and structural relief, or depletion of limited funds to pay class claims, and (3) protect the class from prejudice it would otherwise suffer if class members have refrained from filing suit because of knowledge of the pending action." (citing *Diaz v. Trust Territory of the Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989)); *Richards v. Lesaffre Yeast Corp.*, No. 1:07-cv-163-MEF, 2008 WL 131203, at *1 (M.D. Ala. Jan. 10, 2008).

Other courts have determined that Rule 23(e) does not apply to precertification dismissals, either based on the plain text of the rule in its current form (post-2018 Amendments) or the legislative history. *See Dorn v. Vivint, Inc.*, 2:19cv258-MHT, 2024 WL 709207, at *1 n.1 (M.D. Ala. 2024) (finding that two class representatives could voluntarily dismiss all their claims and claims on behalf of the class against the defendant, explaining that "[Rule 23(e)] does not apply here because it governs the settlement, voluntary dismissal, or compromise of '[t]he claims . . . of [*only*] a certified class—or a class proposed to be certified for purposes of settlement.' Fed. R. Civ. P. 23(e). No class has been certified here; nor do the parties seek certification for purposes of settlement."); *Dougan v. Centerplate, Inc.*, 22-CV-1496, 2023 WL 8604152, at *2–4 (S.D. Cal. Dec. 12, 2023) (relying on the legislative history of Rule 23 to determine that current amendments to the Rule were "intended to take courts out of the business of reviewing pre-certification voluntary

dismissals" because the drafters, after a public comment period, decided not to add clause to the Rule that would have required precertification dismissal approval).

Even if the Court were to assume that Rule 23(e) applies to precertification dismissals, "there is nothing that would warrant this court disapproving of Plaintiffs' dismissal [of Count III] or requiring notice be given to absent class members." *Anderberg*, 176 F.R.D. at 690. Count III alleges that Defendants violated § 502(c) of the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to provide minimum funding notices to pension plan participants and eligible beneficiaries, as is required by 29 U.S.C. § 1021(d). As in *Anderberg*, this is not a case where the named representative, George Baker, individually agreed to settle this count and now seeks a voluntary dismissal of the class allegations. *See Anderberg*, 176 F.R.D. at 690. Rather, the Court has seen no evidence of collusion. Further, putative class members would not be prejudiced by this dismissal, as this dismissal is occurring precertification and there is no evidence that putative class members have foregone individual litigation in reliance of this class claim. *See id.* Accordingly, Count III is due to be dismissed, as agreed upon by the parties, and notice of this dismissal to unnamed class members is not required.

3.    **Conditional Class Certification for Settlement Purposes of Count IV**

For the purposes of Count IV, the parties have asked this Court to preliminarily certify the following settlement class, pursuant to Rule 23(b)(3):

5

All participants of the R.L. Zeigler Co., Inc. Money Purchase Pension Plan who were participants in the Plan or became participants on or after December 1, 2018, through present or were entitled to a pension benefit statement during that time period.[1]

Excluded from the Class are Defendant Ken Fitzgerald and any member of the board of directors of Defendant R.L. Zeigler Co., Inc.

(Doc. 37 at 7–8.) Count IV arises under ERISA and alleges that Defendants failed to provide annual pension benefit statements to class members.

"In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class." *In re Checking Account Overdraft Litigation*, 275 F.R.D. 654, 659 (S.D. Fla. May 24, 2011).

a. **Standing**

Before the Court may grant a motion for class certification, the class representative must individually satisfy the requirements of Article III standing. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019). This means that the class representative must show: "(1) he has suffered an injury in fact that is (a)

---

[1] This definition includes beneficiaries of deceased Participants ("Eligible Beneficiaries") of the Plan who were entitled to receive a pension benefit statement. Eligible Beneficiaries includes: (1) beneficiaries who were designated by a Participant evidenced by a signed beneficiary designation form or (2) who were not designated but were eligible to receive benefits on behalf of a participant in accordance with the terms of the Plan. Further, to be an Eligible Beneficiary the person must have been entitled to receive a pension benefit statement following the death of the Participant because they maintained an active account in the Plan (one that held monies and gained earnings or interest).

concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) [his] injury is fairly traceable to the conduct of the defendant; and (3) it is likely, not just merely speculative, that [his] injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Class representative George Baker is a former employee of Defendant R.L. Zeigler Co. and participant in the pension plan that is the subject of this action. (Doc. 15 ¶¶ 1, 12; Doc. 37 at 19.) Baker alleged that he did not timely receive annual pension benefit statements. (Doc. 37 at 19; Doc. 15 ¶¶ 107–14.) This injury is fairly traceable to the relevant class Defendants, all of whom are involved in the administration of the pension plan. The injury is also redressable by the terms of this settlement. Accordingly, Baker has standing to represent the proposed class.

b.    **Class Definition and Ascertainability**

Plaintiff Baker must now establish the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (first citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); then citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)). The Eleventh Circuit has traditionally "collapsed class definition and ascertainability into one inquiry." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). "A class is inadequately defined if it is defined through vague or subjective criteria.

And without an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it." *Id.* (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). But "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry*, 986 F.3d at 1304.

Based on the proposed class definition, the following objective criteria can be used to ascertain who belongs to the class: 1) participation in the pension plan or beneficiary status; 2) the date at which the relevant individual became a participant in the plan or was entitled to a benefit statement. Therefore, for the purposes of this preliminary certification and settlement, the Court conditionally finds that this class is adequately defined and clearly ascertainable.

    c.    **Numerosity, Commonality, Typicality, and Adequacy**

Upon finding that the class is adequately defined and ascertainable, the Court must then determine that the class satisfies the four requirements denoted in Federal Rule of Civil Procedure 23(a). *See Little*, 691 F.3d at 1304. Those requirements are:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The four requirements "are commonly referred to as 'numerosity, commonality, typicality, and adequacy of representation.'" *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d. 1181, 1188 (11th Cir. 2003) (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000)).

In determining whether the class is sufficiently numerous, courts have found that "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors" *Comeens v. HM Operating Inc.*, No. 6:14-cv-00521-JHE, 2016 WL 4398412, at *2 (N.D. Ala. Aug. 18, 2016) (quoting *Cox v. Am. Cast. Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). As Defendants' records of plan participation indicate that there are approximately 178 class members,[2] the Court conditionally finds that the proposed class satisfies the numerosity requirement.

"Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). In other words, the class members' claims must "depend upon a common contention . . . of such a nature that it is capable

---

[2] To the extent any participant entitled to recover under this settlement is deceased and has multiple beneficiaries, the beneficiaries will each receive a copy of the class notice and will receive a pro rata portion (split among the eligible beneficiaries of the deceased participant) of the amount that would have been distributed to the participant under the Settlement Agreement had he/she been alive.

of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, Plaintiffs' allegations as to Count IV all stem from a common occurrence: Defendants' alleged failure to provide pension benefit statements annually to plan participants and eligible beneficiaries, who were entitled to receive those statements at least once per year under 29 U.S.C. § 1025(a)(1)(A)(ii). Further, in the event Defendants did fail to provide these statement, there is a common question as to whether Plaintiffs are entitled to discretionary relief in the amount of up to $110.00 per day from the date of the violation under 29 U.S.C. §1132(c)(1). The resolution of these issues would resolve the claims "in one stroke." *Wal-Mart*, 564 U.S. at 350. Accordingly, the Court preliminarily finds commonality is satisfied.

In a similar vein, the typicality requirement "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.*" Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322–23 (11th Cir. 2008) (internal citation omitted). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). The typicality requirement does not require identical claims. *Id*. Here, the claim of Representative Baker regarding

whether Defendants failed to provide pension benefit statements once each calendar year arises from the same events and legal theories as those of the class. There is typicality.

Finally, the adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Achem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "The adequacy-of-representation requirement thus 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Doe v. MG Freesites*, Ltd., 7:21-cv-00220-LSC, 2023 WL 8792153, at *8 (N.D. Ala. Dec. 19, 2023) (quoting *Valley Drug Co.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). In determining whether the class representative will adequately prosecute, the Court considers whether class counsel is "qualified, experienced, and financially able to prosecute this case." *Doe*, 2023 WL 8792153, at *8; *see also Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). Here, there is no indication that Representative Baker or class counsel has any conflicts of interest with other class members. Baker has adequately protected the interests of class members by actively reviewing case materials, complying with discovery requests, and participating in a full-day mediation. (Doc. 37 at 13.) Moreover, class attorneys, David Martin and Brad Ponder, have extensive experience litigating class action claims, including claims

involving ERISA. (Doc. 37-2.) To this point, Martin and Ponder have acted as zealous advocates by conducting nearly a year's worth of document production and discovery and attending mediation on behalf of the Class. (Doc. 37 at 4–5.) The Court has now trouble finding adequacy of representation.

For the foregoing reasons, preliminary certification of the class is appropriate under Rule 23(a).

d.   **Rule 23(b)**

Once the prerequisites of Rule 23(a) are satisfied, the Court must next find the class satisfies at least one of the three elements listed in Rule 23(b). *See Little*, 691 F.3d at 1304. The applicable section to this class is Rule 23(b)(3):

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Common questions of law or fact predominate over individual questions if "they have a direct impact on every class member's effort to establish liability and on every class member's . . . entitlement to injunctive and monetary relief." *Cordoba*, 942 F.3d at 1274 (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). In determining whether the common questions predominate over the individual questions, courts must engage in a three-step inquiry. *See Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1234 (11th Cir. 2016). "[A] district court must first identify the parties' claims and defenses and their elements. The district

court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial . . .  After identifying the common and individual questions, the district court should determine whether the common questions predominate over the individual ones." *Id.* at 1234–35. As a general rule, common issues predominate when "the addition or subtraction of any of the plaintiffs to or from the class [do not] have a substantial effect on the substance or quantity of evidence offered." *Brown*, 817 F.3d at 1235 (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009)).

All class members share a common claim regarding Defendants' alleged failure to furnish a pension benefit statement at least once each calendar year. *See* 29 U.S.C. § 1025(a)(1)(A)(ii). The focus of this claim is the common question of Defendants' duty to provide the pension benefit statements to the class members, as plan participants or eligible beneficiaries, and Defendants' alleged failure to do fulfill this duty owed to all class members. Flowing from the resolution of this common claim, based on Defendants' common conduct, is a common question of damages under 29 U.S.C. § 1132(c)(1). Therefore, based on these common questions, the Court finds predominance as to Count IV for the purposes of preliminary certification of the class.

As to the superiority requirement, the Court is required to balance "the relative advantages of a class action suit over whatever other forms of litigation might be

realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004), *abrogated on other grounds by Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 885 (11th Cir. 2023). There are four considerations:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). If the predominance requirement is satisfied, "the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Klay*, 382 F.3d at 1269. Further, because certification is being sought as a part of a settlement, the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Products, Inc.*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

The Court finds that the proposed settlement amount, when balanced against the cost of pursuing individual claims and the relatively small amounts at stake for most class members, makes it unlikely that an individual would have an interest in controlling the prosecution of a separate action.[3] This is further evidenced by the fact that neither Plaintiffs nor the Court are aware of any other cases filed against

---

[3] To the extent a class member wishes to control the prosecution of their own claims, they are able to opt out of this class.

Defendants pertaining to these claims. (Doc. 37 at 16.) Additionally, an individual is not likely to find this forum undesirable, since ERISA litigation is almost exclusively conducted in federal district courts, and this is the district where Defendants' alleged misconduct occurred. And a single, class-wide resolution would advance the interests of judicial efficiency and administration of justice for all parties.

Accordingly, certification of the settlement class is appropriate, preliminarily, under Rule 23(b)(3).

### 4.    **Preliminary Settlement Approval**

"Rule 23(e) requires judicial approval of any class action settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). There is a strong presumption favoring the settlement of class action lawsuits. *See In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d at 1341. The Court must preliminarily review a class settlement to ensure it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining if a settlement is fair, reasonable, and adequate, courts have traditionally relied on the *Bennett* factors:

> (1) the likelihood of success at trial
> (2) the range of possible recovery
> (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable;
> (4) the anticipated complexity, expense, and duration of litigation
> (5) the opposition to the settlement; and
> (6) the stage of proceedings at which the settlement was achieved.

*Faught v. Am. Home Shield Corp.,* 668 F.3d 1233, 1240 (11th Cir. 2011) (citations omitted).

In 2018, Rule 23(e) was amended to add a mandatory, but non-exhaustive set of final approval criteria:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1114–15 (M.D. Fla. 2021) (quoting Rule 23(e)(2)).

Notably, the amendment was not meant to remove the previously identified factors, but instead "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Ponzio v. Pinon*, 87 F.4th 487, 494–95 (11th Cir. 2023) (quoting Fed. R. Civ. Pro 23(e)(2), Advisory Committee's Note to 2018 Amendment). Courts should

use "[t]he four core concerns set out in Rule 23(e)(2) [to] provide the primary considerations in evaluating proposed agreements," but "the *Bennett* factors can, where appropriate, complement those core concerns." *Ponzio*, 87 F.4th at 495. As the Eleventh Circuit has explained:

> *Bennett* factors (1), (2), (4), and (6) can inform "whether the relief provided to the class is adequate" (core concern three). And *Bennett* factors (3) and (5) can inform "whether the proposal treats class members equitably relative to each other" (core concern four).

*Id.*

### a. **Adequate Representation**

Consistent with Fed. R. Civ. P 23(a)(4), the Court finds the Class was adequately represented by both Class Representative and Class Counsel. Class Representative Baker was active and engaged during discovery, and he participated in mediation. (Doc. 37 at 13.) Baker has a genuine personal interest in the outcome of this case as a participant of the pension plan who alleges that he did not timely receive annual pension benefit statements. Additionally, Class Counsel is well versed in ERISA and class actions, and has engaged in hard-fought litigation on behalf of the class members. (Doc 37-2.)

### b. **Arm's Length Negotiation**

The Court further finds that the proposed settlement agreement is not a result of collusion and was agreed upon through arm's length negotiations between experienced attorneys who are informed of and familiar with the legal and factual

issues. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion. Further, where the case proceeds adversarially, this counsels against a finding of collusion."). The parties invested significant time and effort completing substantive discovery, resulting in the exchange and review of over 1700 documents (Doc. 37 at 4.) On April 2, 2024, the parties attended mediation with Bruce F. Rogers. (*Id.* at 5.). While they did not reach a final resolution during the mediation session, the parties continued to negotiate afterwards, resulting in a final resolution on April 12, 2024. (*Id.*)

   c. **Adequate Relief**

As enumerated above, when determining whether the settlement provides adequate relief, the court must weigh:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3)

Fed. R. Civ. P. 23(e)(2)(C). The following *Bennett* factors may also inform the Court's consideration: (1) the likelihood of success at trial; (2) the range of possible

recovery; . . . (4) the anticipated complexity, expense, and duration of litigation; . . . (6) the stage of proceedings at which the settlement was achieved." 737 F.2d at 986.

First, as to the "costs, risks, and delay of trial and appeal," the parties have already exchanged over 1,700 discovery documents (Doc. 37 at 4), and not settling this case would only increase that production and corresponding review. As the Defendants have preliminarily agreed not to object to an attorneys' fees and costs amount of $265,000 (*Id.* at 22), continued litigation would result in exorbitant litigation costs. It would additionally delay the class members' recovery by at least a year if this case were to proceed to trial. (*Id.* at 21.)

Further, there is "no guarantee that the plaintiffs would prevail on their claims" at trial. *Carroll v. Macy's, Inc.*, No.: 2-18-cv-01060-RDP, 2020 WL 3037067, at *6 (N.D. Ala. June 5, 2020) (quoting *Camp v. City of Pelham*, No. 2:10-cv-01270, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014). Up to this point, the parties have engaged in significant argument over "whether a plaintiff is entitled to damages under 29 U.S.C. § 1132(c)(1) when a plan administrator fails to annually provide pension benefit statements under 29 U.S.C. § 1025(a)(1)(A)(ii) and whether such an action is a breach of fiduciary duty." (Doc. 37 at 21.) Additionally, Defendants have argued that "that some of the Class Members may have received pension benefit estimates and/or that some of the Class Members were not entitled to damages under 29 U.S.C. §1132(c)(1) because they did not request a pension benefit statement in

writing and/or had not suffered any damage as a result of not receiving a pension benefit statement." (*Id.*) These are complex ERISA issues. And further, even if Plaintiffs establish liability under 29 U.S.C. § 1025(a)(1)(A)(ii), "damages under 29 U.S.C. §1132(c)(1) are completely discretionary and can range from $0 a day up to a maximum of $110.00 per day from the date of the violation." (*Id.*) Thus, while Plaintiffs' damages could be substantial, as it appears that Plaintiffs allege that Defendants did not provide the benefit statements for multiple years (*Id.* at 4), Plaintiffs' damages are far from certain. Accordingly, when considering the proposed economic relief of $253,700, split equally, this factor weighs in favor of settlement.

Next, as to the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims," the proposed method of claims administration is effective. The Settlement Agreement does not require any action by class members to receive settlement benefits, and all class members receive an equal share of the $253,700.00. (Doc. 37-1, § VI, ¶ 2; Doc. 37-1 § V, ¶ 1.). Checks will be mailed directly to Class Members, who will be specifically identified by a simple review of Defendants' records. (Doc. 37 at 22.) Furthermore, the parties believe the delivery of settlement benefits should be simple, as pension benefit payments were made as recently as last October, so most checks are likely deliverable to known addresses. (*Id.*) "If notices or checks or returned as

undeliverable, the Settlement Administrator will use its best efforts to obtain correct current addresses, including utilizing trace searches." (*Id.* (citing Doc. 37-1, § III, ¶ 5.))

In terms of any proposed award of attorney's fees, including timing of payment, Plaintiffs assert that they will petition the court at an appropriate time for the actual costs and fees based on ERISA's fee-shifting provision. *Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993). The ultimate settlement is not contingent on an award of attorneys' fees and costs. (Doc. 37 at 23.) The Settlement Agreement specifically provides that Defendants will establish a fund of up to $265,000 to pay attorneys' fees and costs and that Defendants will not object to an award up to this amount. (*Id.* at 22 (citing Doc. 37-1 § VII, ¶¶ 1–2.) The attorneys' fees and costs fund is separate from the class settlement fund. ((Doc. 37 at 22 (citing Doc. 37-1 § VII, ¶¶ 1–2.) And the fund "amount was calculated based on actual hours and costs incurred as of the date of the mediation, and an estimation of hours and costs to be incurred through the end of the litigation, including the costs of administration of the settlement." (Doc. 37 at 22–23.) Accordingly, while the Court reserves judgment on the appropriate amount of attorneys' fees until after the parties' petition, the Court preliminarily finds it meets this aspect of the adequacy requirement.

Finally, in terms of the identifying agreements, the parties have only entered into two agreements: the Settlement Agreement itself (Doc. 37-1) and a standard

agreement, contained within the Settlement Agreement, providing that if requests for exclusion from the Settlement Class exceeds an agreed-upon threshold, the Defendants shall have the option (but not the obligation) to terminate the Settlement (Doc 37-1 at 26–28).

Having weighed the foregoing factors, the Court finds the settlement to be adequate.

### d. **Equitable Treatment of Class Members**

Lastly, Rule 23(e)(2)(D) requires that all Class Members are treated equitably. As stated previously, the Settlement Agreement does not require any action by class members to receive settlement benefits, and all class members will receive an equal share of the $253,700.00 settlement amount. (Doc. 37 at 22.)

In terms of the relevant *Bennett* factors, starting with the "opposition to settlement" factor, the notice process provides a period to object to the proposed settlement, up to twenty-one (21) days before the final approval hearing. Therefore, while there has been no opposition up to this point, there is a sufficient time period for any objectors to emerge. As to the "the range of possible recovery at which a settlement is fair, adequate, and reasonable," given that penalties under 29 U.S.C. §1132(c)(1) are discretionary and may range from $0.00 per day to $110.00 per day from the date a pension benefit statement was not provided and was required to be provided, the settlement is reasonable because it provides absolute certainty to a

benefit each Class member will receive. Accordingly, the Court preliminarily finds that the settlement treats class members equitably relative to each other.

5.      **Preliminary Findings Concerning the Notice Program**

As in all other cases, class action suits are "subject to the requirements of due process." *Twigg v. Sears*, 153 F.3d 1222, 1226 (11th Cir. 1988). "Due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of [an] action and afford them an opportunity to present their objection.'" *Henry v. ExamWorks Inc.*, No. 20-12268, 2021 WL 3440698, at *3 (11th Cir. Aug. 6, 2021) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 399 U.S. 306, 314 (1950)). The notice provisions of Rule 23 "are meant to protect the due process rights of absent class members." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11th Cir. 2012). Therefore, Federal Rule 23(c)(2)(B) directs the Court to provide notice to class members that is "practicable under all the circumstances." The Court must further find the notice uses plain language to clearly and concisely state:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Twigg*, 153 F.3d. at 1227 (explaining that in reviewing a class notice, the Court must "look solely to the language of the notices and manner of distribution").

The form, content, and method of giving notice to this settlement class constitutes the best practicable notice under the circumstances. The Court finds the form and method of physically mailing the class notice to each class member via first class U.S. mail, along with posting class notice on a website maintained by the Settlement Administrator, is adequate. (Doc. 37-1, § III, ¶ 3.) For most class members, their addresses have been maintained in Defendants' records. (*Id.*) The Settlement Administrator will further conduct an address search for any class member whose class notice was returned as undeliverable and resend the class notice through the USPS forwarding address provided through the search. (Doc. 37-1, § III, ¶ 5.) The language of the notice clearly explains the nature of the class claim, the definition of the class being certified, the appearance and exclusion rights of class members, the effect of a judgment. (Doc. 37-1, Exhibit A)

The notice program is reasonably calculated, under the circumstances to apprise the Settlement Class of this pending action, the terms of the proposed agreement, and their rights concerning the Settlement Agreement using plain and

easily understandable language. The Court finds the notice program satisfies all applicable requirements of the law, including, but not limited to Federal Rule of Civil Procedure 23(c) and the United States Constitution.

The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on August 2, 2024.

L. Scott Coogler
United States District Judge

215755